UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | 11 Cr. 1032-55 (PAE) |
| -v- | OPINION & ORDER |
| RAMON LIZARDI, | |
| Defendant. | |

PAUL A. ENGELMAYER, District Judge:

The Court has received a request from defendant Ramon Lizardi seeking his release from

Fort Dix Federal Correctional Institution ("Fort Dix FCI") pursuant to 18 U.S.C. § 3582(c)(1)(A)(i),

in light of the risk that the COVID-19 pandemic presents for inmates. *See* Dkt. 2513 ("Def.

Ltr."); Dkt. 2519 ("Def. Mem."); *see also* Dkt. 2521 ("Def. Reply"). The Government opposes

this request. *See* Dkt. 2520 ("Gov't Mem."); *see also* Dkt. 2522 ("Gov't Ltr."). For the

following reasons, the Court grants this application.

Lizardi was a member of the Bad Boys, a sect of the Bronx Trinitarios Gang ("BTG"),

between 2004 and 2006. Gov't Mem. at 1; Dkt. 1600 ("Sent. Tr.") at 34. As a member of the

Bad Boys, Lizardi participated, in a secondary role, in the murder of Miguel Perez. On

December 11, 2005, Lizardi and other Bad Boy members went to 187th Street and Marion

Avenue, looking to retaliate against a member of their rival gang, the Dominicans Don't Play

("DDPs"), for a murder of a Bad Boy committed by the DDPs. One of Lizardi's fellow Bad Boy

members shot Perez in the head while Lizardi was present. While in the BTG, Lizardi also took

part in other violent disputes with rival gangs, in which he was armed with a knife. Gov't

Memo. at 1; Sent. Tr. at 34–35.

On April 16, 2014, Lizardi pled guilty to participating in a racketeering conspiracy in connection with his membership in the BTG. Dkt. 1107. On December 17, 2014, the Court sentenced Lizardi to 121 months' imprisonment, at the bottom of the advisory guideline range of between 121 and 151 months' imprisonment. The Court recognized aggravating factors, primarily the seriousness of Lizardi's offenses, and in particular his support role in the Perez murder. Sent. Tr. at 37. At the same time, the Court noted that, in the five years before he was prosecuted, Lizardi had renounced his gang affiliation and lived peaceably. *Id*. at 21–22, 31, 39–41. The Court then determined that, in light of these facts, and in particular the reduced need for incapacitation and specific deterrence given Lizardi's demonstrated renunciation of the BTG years before he was prosecuted, a sentence at the bottom of the guideline range, and not higher, was warranted. *Id*. at 39, 45.

Lizardi has been incarcerated since his arrest on January 16, 2013. He has served nearly 93 months of his 121-month sentence. Def. Mem. at 1. Lizardi's counsel represents that, with expected credit for good time, Lizardi is currently scheduled to be released on September 11, 2021, less than 11 months from now. *Id.* at 1–2. Lizardi has also been told by his case manager that he will be released to a halfway house on March 15, 2021. *Id.* at 2. The Government does not dispute these calculations, including that Lizardi is on track to be released from prison in a little over five months.

On August 26, 2020, the Court received a motion from Lizardi seeking early release in light of the COVID-19 pandemic. *See* Def. Ltr. On August 27, 2020, the Court reappointed Lizardi's trial counsel, Florian Miedel, Esq. and Russell T. Neufeld, Esq., for the limited purpose of submitting a memorandum of law in support of his application for compassionate release. Dkt. 2514. On September 25, 2020, Lizardi's counsel filed such a memorandum, arguing that

release is warranted on account of the pandemic, the fact that Lizardi has served almost his entire sentence and will soon be released to a halfway house, Lizardi's efforts at rehabilitation, and the lack of a need for incarceration to protect the public. *See* Def. Mem.  On September 30, 2020, the Government opposed Lizardi's motion.  It argues that there are not compelling and extraordinary reasons supporting release because Lizardi is a healthy 34-year-old man who does not face a heightened risk from COVID-19, and because, in its view, early release is unsupported by the sentencing factors set out in 18 U.S.C. § 3553(a).  On October 1, 2020, Lizardi's counsel filed a reply, arguing that the conditions of Lizardi's confinement present heightened risks of infection and that the § 3553(a) factors are compatible with release, particularly given the harsh conditions of confinement that Lizardi has experienced since March 2020, when the pandemic struck.   Def. Reply.  On October 2, 2020, the Government filed a letter, contesting defense counsel's tabulation of the number of current cases of COVID-19 at Fort Dix FCI.  Gov't Ltr.

> Under 18 U.S.C. § 3582(c)(1)(A), a court:

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf . . . may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that— (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The defendant bears of the burden of proving that he is entitled to compassionate release under 18 U.S.C. § 3582(c).  *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease."); *United States v. Clarke*, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010).

Originally, § 3582(c)(1)(A) did not permit prisoners to initiate compassionate release proceedings, and instead required the BOP to seek such release on their behalf. *United States v. Ebbers*, 432 F. Supp. 3d 421, 422–23, 427 (S.D.N.Y. 2020). However, with the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, Congress amended the law to allow defendants independently to seek compassionate release relief from federal courts. *Ebbers*, 432 F. Supp. 3d at 422–23.

The Second Circuit has recently clarified the regulatory guidance applicable to § 3582(c) applications made by defendants. Before the First Step Act, Congress had tasked the Sentencing Commission with identifying circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence. *Id.* at 427 (citing 28 U.S.C. § 994(t)). The Commission did so in U.S.S.G. § 1B1.13 and its corresponding commentary. That guidance, *inter alia*, (1) sets out various circumstances that present extraordinary and compelling reasons justifying release; and (2) requires that a defendant not be a danger to the community. *Id.* § 1B1.13(1)–(3) & cmt. n.1(A)–(D).

By its terms, however, the Commission's guidance applies only to a "motion of the Director of the Bureau of Prisons," *id.* § 1B1.13; the Commission has not updated § 1B1.13 or its commentary to reflect the First Step Act's amendment to § 3582(c)(1)(A) authorizing defendants to move for compassionate release on their own. Accordingly, although courts, including this one, had heretofore widely treated the Commission's guidance as applicable to all compassionate release motions, *see, e.g.*, *United States v. Hernandez*, 451 F. Supp. 3d 301, 303 (S.D.N.Y. 2020); *see also Ebbers*, 432 F. Supp. 3d at 428, the Second Circuit has recently clarified that § 1B1.13 "is not 'applicable' to compassionate release motions brought by defendants," rather than by the BOP, and "cannot constrain district courts' discretion to consider whether any reasons are

extraordinary and compelling" in such cases. *United States v. Brooker*, No. 19-3218, 2020 WL 5739712, at *6 (2d Cir. Sept. 25, 2020); *see also id.* at *7 ("Neither Application Note 1(D), *nor anything else in the now-outdated version of Guideline § 1B1.13*, limits the district court's discretion." (emphasis added)).

Consistent with *Brooker*, in assessing a § 3582(c) motion brought directly by a defendant, the Court is not constrained by either § 1B1.13's enumeration of extraordinary and compelling reasons, or its freestanding requirement that the defendant seeking release not pose any danger to the community. Rather, the Court, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," 18 U.S.C. § 3582(c)(1)(A)(i), may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." *Brooker*, 2020 WL 5739712, at *7.

In this case, consideration of the 18 U.S.C. § 3553(a) factors favor the slight expedition (by five months) of Lizardi's release date, into a federal halfway house, that his § 3582(c) motion seeks. Significant here, Lizardi is the rare violent-gang defendant as to whom the § 3553(a) factor requiring that a sentence "protect the public from further crimes of the defendant" does not demonstrably require long incarceration. As this Court explained at Lizardi's 2014 sentencing, his "situation is unusual in that [his] criminal record stops after 2006." Sent. Tr. at 38–39. The Court there noted that, as reflected in Lizardi's renunciation of the BTG and criminal activity five years before the charges in this case were filed, Lizardi had demonstrably "turned away from crime from that point forward . . . . [He] gained maturity and turned over a new leaf." *Id.* at 39. That fact, the Court explained at sentencing, "significantly mitigates the need for specific deterrence" and created no more than a "modest" need for Lizardi's incapacitation in the interest of public protection. *Id.* Consistent with the Court's assessment at sentencing, these § 3553(a)

5

factors do not require that Lizardi spend the next five months at Fort Dix FCI before his release to a halfway house.  Lizardi's release now, five months ahead of schedule, into the less restrictive environment of a halfway house, leaves the public adequately protected.

The principal bases on which the Court determined in 2014 that a 121-month sentence was necessary were to assure that Lizardi's sentence reflected the seriousness of his offense, to promote respect for the law, and to provide just punishment.  Those factors remain as weighty as at the time of sentencing.  However, Lizardi's term in custody has proven more arduous than the Court—or anyone—could ever have anticipated in 2014.  That is because, for the past seven months, Lizardi has been incarcerated during the unprecedented worldwide COVID-19 pandemic.

As has been widely chronicled, the pandemic, for good and sound penological reasons relating to arresting the spread of the virus within the crowded confines of federal prisons and jails, has required extreme restrictions on prisoners' movements and visits.  It has also exposed prisoners to heightened fears of contagion.[1]

Long before the current pandemic, courts had recognized that periods of pre-sentence custody spent in unusually arduous conditions merited recognition by courts in measuring the just sentence.  *See, e.g.*, *United States v. Carty*, 264 F.3d 191, 196–97 (2d Cir. 2001) (holding that that "pre-sentence confinement conditions may in appropriate cases be a permissible basis for downward departures," and vacating and remanding the defendant's sentence "so that the

---

[1] *See* Timothy Williams, et al., *'Jails Are Petri Dishes': Inmates Freed as the Virus Spreads Behind Bars*, N.Y. Times (May 20, 2020), https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html; *see also United States v. Nkanga*, 450 F. Supp. 3d 491, 492 (S.D.N.Y. 2020) (citing *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctrs. for Disease Control & Prevention 2 (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf) (highlighting danger faced by those in jails and prisons).

district court [could] reconsider the defendant's request for a downward departure, and do so in the light of this holding"); *United States v. Sanpedro*, 352 F. App'x 482, 486 (2d Cir. 2009) (noting that "[i]n imposing the sentence it did, the district court considered . . . [among other factors,] the harsh conditions of [the defendant's] confinement at Combita," in Columbia where he was detained before being extradited to the United States); *United States v. Salvador*, No. 98 Cr. 484 (LMM), 2006 WL 2034637, at *4 (S.D.N.Y. July 19, 2006) (holding that the defendant's pre-sentence conditions while "incarcerated in the Dominican Republic, awaiting extradition to the United States . . . warrant a downward departure"); *United States v. Torres*, No. 01 Cr. 1078 (LMM), 2005 WL 2087818, at *2 (S.D.N.Y. Aug. 30, 2005) ("depart[ing] downward, by 1 level, because of the harsh conditions of defendant's pretrial detention").

     The same logic applies here.  A day spent in prison under extreme lockdown and in legitimate fear of contracting a once-in-a-century deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison.  While such conditions are not intended as punishment, incarceration in such circumstances is, unavoidably, experienced as more punishing. *See* Def. Mem. at 6; *United States v. Rodriguez*, No. 00 Cr. 761-2 (JSR), 2020 WL 5810161, at *3 (S.D.N.Y. Sept. 30, 2020) ("The pandemic, aside from posing a threat to [a defendant's] health, has made [a defendant's] incarceration harsher and more punitive than would otherwise have been the case.  This is because the federal prisons, as 'prime candidates' for the spread of the virus, have had to impose onerous lockdowns and restrictions that have made the incarceration of prisoners far harsher than normal." (citation omitted)); *United States v. Salemo*, No. 11 Cr. 0065-01 (JSR), 2020 WL 2521555, at *3 (S.D.N.Y. May 17, 2020) ("noting that the BOP has taken a number of steps to mitigate the spread of the virus in federal prisons . . . [including] restrictions on visitors, restrictions on gatherings . . . [and] lockdowns lasting at least

14 days"); *United States v. Smalls*, No. 20 Cr. 126 (LTS), 2020 WL 1866034, at *2 (S.D.N.Y. Apr. 14, 2020) (noting that the "BOP has instituted a mandatory 14-day quarantine lockdown of all inmates across the BOP system"). Here, the Court's judgment is that the seven months in which Lizardi has spent in prison during COVID-19 offsets the need for him, in order to assure just punishment, to serve the next five months in prison, as opposed to in less restrictive confinement.

To be sure, the circumstance commonly invoked during the pandemic to justify release under § 3582—the defendant's heightened vulnerability to COVID-19, relevant to the factors of the "history and characteristics of the defendant" and "the need to provide the defendant with needed . . . medical care," *see* 18 U.S.C. § 3553(a)(1), (2)(D) [2]—is not present here, because Lizardi does not have (or claim to have) such a condition.  Nonetheless, since March 2020, there has been an outsized risk, even for a medically ordinary prisoner, that the COVID-19 contagion, once it gains entry into the crowded environment of a prison, will spread.  Although Lizardi cannot claim heightened vulnerability to COVID-19, his claim during the past seven months to have experienced heightened deprivation—and to have experienced unexpectedly punishing prison conditions—is credible.

---

[2] *See, e.g.*, *United States v. Wilson*, 16 Cr. 317 (PAE), Dkt. 656 at 4–7 (S.D.N.Y. Aug. 31, 2020) (ordering compassionate release of defendant with heightened vulnerability who had served the substantial majority of his sentence and played a low-level role in a drug trafficking conspiracy); *United States v. Simon*, 18 Cr. 390 (PAE), Dkt. 507, at 5–9 (S.D.N.Y. Aug. 27, 2020) (ordering compassionate release of elderly defendant, who had serious medical conditions and played a low-level role in a drug trafficking conspiracy); *United States v. Davies*, No. 18 Cr. 390 (PAE), Dkt. 479 at 4–7 (S.D.N.Y. June 26, 2020) (ordering compassionate release of elderly defendant, who had serious medical conditions and played low-level role in drug trafficking conspiracy); *United States v. Brown*, No. 18 Cr. 390 (PAE), Dkt. 472 at 4–7 (S.D.N.Y. June 17, 2020) (same); *United States v. Jasper*, No. 18 Cr. 390 (PAE), Dkt. 441 at 2–4 (S.D.N.Y. Apr. 6, 2020) (ordering compassionate release of defendant with an immune-inflammatory disease who had served all but 34 days of a four-month sentence).

Accordingly, the Court finds that the § 3553(a) factors, viewed collectively today, are consistent with expediting Lizardi's release from FCI Fort Dix by five months, as he requests.

For much the same reasons, the Court finds that the assembled considerations provide "extraordinary and compelling reasons," *Brooker*, 2020 WL 5739712, at *7, justifying Lizardi's early release.  The Court primarily bases this finding on the unexpectedly punishing quality of the past seven months that Lizardi has spent in custody during the unprecedented pandemic; the fact that Lizardi, dating back to 2014, has been identified by the Court as not presenting a continuing danger to society; the fact that Lizardi by now has served close to his entire lengthy sentence; and the imminence of his release date to a halfway house.  His case thus accords with others during this extraordinary time in which the Court has recently granted compassionate release to prisoners who had served the vast majority of their sentences.[3]

The Court accordingly grants Lizardi's motion for compassionate release from prison pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  The Court will direct that, as a condition of the term of supervised release that upon release will immediately commence, Lizardi spend the first six months following release in a halfway house, or, if a suitable placement cannot be made by the

---

[3] *Compare United States v. Knox*, No. 15 Cr. 445 (PAE), Dkt. 1088 (S.D.N.Y. Apr. 10, 2020) (granting compassionate release of defendant who had served all but seven months of an 88-month sentence); *United States v. Hernandez*, 451 F. Supp. 3d 301 at 305 (same for defendant who had asthma and had served 17 months of a 24-month sentence and was scheduled for release in four months); *United States v. Benjamin*, No. 15 Cr. 445 (PAE), Dkt. 1144 at 6–7 (same for defendant who had asthma and had served nine years of his 10-year sentence), *with United States v. Harris*, No. 15 Cr. 445-11 (PAE), 2020 WL 5801051 (S.D.N.Y. Sept. 29, 2020) (denying compassionate release where gang defendant had served less than half of his 132 month sentence); *United States v. Romero*, No. 15 Cr. 445 (PAE), 2020 WL 2490027, at *1 (S.D.N.Y. May 14, 2020) (denying compassionate release for gang defendant who had engaged in shootings and had served "approximately 54 months of his significantly below-guidelines sentence of 78 months' incarceration"); *United States v. Francisco*, No. 19 Cr. 131 (PAE), Dkt. 416 at 1, 5 & n.5 (S.D.N.Y. June 29, 2020) (denying compassionate release where defendant had served only 60% of his sentence).

United States Probation Department, under strict conditions of home confinement.  Such

restrictions are intended to advance various interests recognized by § 3553(a), including to assist in

Lizardi's reintegration into society.  To assure time to implement this order, the Court orders

Lizardi's release on October 19, 2020.  The Court directs that the Government and defense, in

consultation with the Probation Department, submit to the Court, by noon on October 16, 2020,

an agreed upon order setting out the terms of Lizardi's halfway house placement, or, if a suitable

halfway house placement cannot be made, setting out the conditions of home confinement.

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated:  October 9, 2020
        New York, New York